THE PRINZ GEORG.[1]

BELLICI and others *v.* THE PRINZ GEORG.[1]

*(Circuit Court, E. D. Louisiana.   December 25, 1884.)*

1. ADMIRALTY—JOINDER OF PARTIES.
    Where a thing is defendant, and several persons are asserting rights in it, distinct but before the same tribunal, the proceedings are, for certain purposes, necessarily to be considered together, *i. e.*, to rank the claims or to proportion the proceeds.   S. C. 19 FED. REP. 653, affirmed.

2. THE PASSENGER ACT, 22 ST. AT LARGE, 186.
    The responsibilities and duties devolving upon vessels and their masters under the passenger act of 1882 (22 St. at Large, 186) cannot be evaded by a contract of charter.

3. SAME—SECTION 4.
    The penalty of three dollars *per diem* for each passenger put upon short allowance for food and water, given by the fourth section of said passenger act, constitutes a claim against the vessel, and may be enforced by proceedings *in rem.*

Admiralty Appeal.

*R. King Cutler* and *Richard De Gray,* for libelants.

*E. W. Huntington, Horace L. Dufour, George H. Braughn,* and *Emmet D. Craig,* for claimants.

PARDEE, J.   The district judge decided (1) that the libelants might join their actions in one common libel; (2) that the responsibilities and duties devolving upon vessels and their masters under the passenger act of 1882 (22 St. at Large, 186) could not be evaded by a contract of charter; (3) and that the penalty of three dollars *per diem* for each passenger put on short allowance for food and water, given by the fourth section of said act, constituted a claim against the vessel, and might be enforced by proceedings *in rem.*   The reasons given for thus deciding seem to be full and conclusive, and I deem it unnecessary to amplify or add to them.

The next point in this case to be determined is what said section 4 of said passenger act requires to be furnished to each passenger in the way of food, under the penalty of three dollars per day.   The language of the act is:

"An allowance of good, wholesome, and proper food, with a reasonable quantity of fresh provisions, which food shall be equal in value to one and a half navy rations of the United States, and of fresh water not less than four quarts per day, shall be furnished each of such passengers.   *   *   *   If any such passengers shall at any time during the voyage be put on short allowance for food and water, the master of the vessel shall pay to each passenger three dollars for each and every day the passenger may have been put on short allowance, except in case of accidents where the captain is obliged to put the passengers on short allowance."

It has been assumed in argument that one and a half navy rations in kind are required for each passenger under this law, but I cannot assent to this view, not only because of the exact language in ques-

[1] Reported by Joseph P. Horner, Esq., of the New Orleans bar.

tion, *i. e.*, "which food shall be equal in value to one and a half navy rations," but because, considering the matter of climate and the diversity of country and habit among the many emigrant passengers coming to this country, such construction is not reasonable, and is against the interest of both emigrants and vessels. If any nice point could be raised as to the proper construction of the language quoted, it would be whether the food to be furnished was to be equal in money value or in nutritive value to one and a half navy rations, but this case hardly requires a discussion of so nice a point.

It has been further argued in this case that the failure of the master or the vessel to comply with other requirements of said section 4, "such as failing to serve three meals daily at stated hours, to furnish mothers with infants' wholesome milk, or to furnish tables and seats for passengers at regular meals, would entitle the passengers to recover the three dollars per day penalty; but, again, I think that the language of the act settles the matter, and renders it clear that such a penalty is only allowed for putting passengers on short allowance of food and water."

On the facts of the case I arrive at practically the same conclusions as the district judge. The case shows that the voyage contemplated was one of about 30 days, from Palermo to New Orleans; that the food to be furnished passengers was scheduled on the back of each ticket furnished to passengers; that of such food a supply for the voyage was taken aboard before sailing; that such supply was set apart under the charge of a *gratis* passenger cook, and, together with more or less supplies of the ship, was served with more or less regularity up to the stormy weather occurring between Gibraltar and the Bermudas; that during such stormy weather the unexhausted passengers' supplies were badly damaged; and that, from the time of the stormy weather on to this port of New Orleans, except while lying in port at Bermudas and Philadelphia, the passengers were on short allowance of provisions, as required to be furnished by the passenger act of 1882. Whether the passengers were on short allowance under the law prior to the stormy weather referred to depends upon whether the provisions scheduled on the tickets for each passenger, and supplied on the vessel was or not *equal in value* to one and a half navy rations of the United States, and of this nothing can be said positively from the evidence in the case.

It is true that the passengers grumbled and protested from the time their first sea-sickness was overcome, and that the master procured a small supply at both Escombrero and Gibraltar, and added some from the ship's stores; but I think the main and controlling facts as proved are that the quantity and quality as specified on the tickets were approved by the passengers and port authorities at Palermo before sailing, and that, in kind, they were better suited to emigrant passengers from Italy than the United States navy rations, in kind, would have been.

These facts, taken with the presumption that the master knew our law on the subject and complied with it, and the total absence of evidence of value, warrant the court in finding that the libelants' case fails on this point. While the passengers were in port at Bermudas and at Philadelphia fresh provisions were furnished, and, while they may have had other grounds of complaint, it does not seem that they can, under the evidence, complain of a short allowance of food.

The next question is how far accident obliged the captain to put the passengers on short allowance, as we have seen was the case for the latter part of the voyage. After the provisions were damaged and destroyed the ship neared the Bermudas, where the master in his protest says he was compelled to put in for repairs and to renew provisions. Up to the arrival in Bermudas, then, it is easy to point out the accidents which obliged short allowances to the passengers, but from there on no accident is alleged or proved. At the Bermudas the master knew that the 30 days originally contemplated for the voyage, and for which time the passengers had been provisioned, had expired, and he knew that the supplies originally put aboard for them had been exhausted or destroyed. It was his plain duty, therefore, to have provided at Bermudas sufficient to furnish each passenger "an allowance of good, wholesome, and proper food, with a reasonable quantity of fresh provisions, equal in value to one and a half navy rations of the United States," until his ship could reach Philadelphia; and, again, it was his duty at Philadelphia to have made like provision for the voyage from Philadelphia to this port, all of which he failed to do.

It was not accident, but neglect, of the master that put the passengers on short allowance from Bermudas to Philadelphia, and from Philadelphia to this port, and the time of such short allowance was from December 9th to December 15th, six days; and from December 26th to January 9th, 14 days,—in all making 20 days of unjustifiable short allowance, for which the three dollars per day penalty for each passenger may be allowed. All the adult passengers who have joined in this libel are clearly entitled to recover, each for him or herself, this penalty amounting to $60 each. It seems, from the evidence, that, in contracting for passage, those over 12 years were classified as adults, and those under 12 as half, quarter, and *gratis* passengers, and fare was charged accordingly. The demands of the libel are for the penalty for all, whether adult, half, or quarter passengers. The law provides for each passenger, but cannot contemplate that infant passengers shall be furnished provisions equal in value to one and a half full navy rations. It does not provide for any half or quarter penalties, and the court would have no discretion to impose less than the full sum of three dollars per day for each infant passenger, if it should be held that the law provided a penalty for short allowance of food for such passengers.

The case is one of difficulty, and it is, perhaps, fortunate that in

this case this demand of libelants can be rejected on the evidence without committing the court to a construction of the law, further than to hold that under the law a half or quarter passenger is not entitled to have an allowance of food equal in value to one and a half navy rations, for the evidence does not show what such passengers were allowed, and the presumption in the absence of evidence is that they received all that the law required. The demands of the libel for $100 general damages for each passenger for breach of contract of passage is not sustained by the evidence sufficiently to warrant the court in further mulcting the owners of the vessel. The six passengers who purchased tickets to San Francisco, and who were landed in this port without further transportation being furnished, have a case that the court would relieve if their demand had been put in the libel as well as in the brief of proctors, and sufficient evidence had been offered to enable the court to assess the actual damage; but the fact is that no such demand is contained in the libel.

A decree will be entered to the same effect as that of the district court: the costs of the district court and of this court on claimants' appeal to be paid by the claimants, and the costs of libelants' appeal to be paid by libelants.